ACCEPTED
01-15-00776-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/10/2015 12:09:44 PM
CHRISTOPHER PRINE
CLERK

01-15-00776-CV

**No.** _____

§

§

§    IN THE COURT OF APPEALS

*In re* Rosemary Margenau, Relator    §

FOR THE FOURTEENTH
DISTRICT

§

§    HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/10/2015 12:09:44 PM
CHRISTOPHER A. PRINE
Clerk

# PETITION FOR WRIT OF MANDAMUS

*/s/ Alison J. Meyers*
Alison J. Meyers
Attorney for Relator
State Bar No.: 24041477
1601 Westheimer Rd.
Houston, Texas 77006
Ph.: 713-859-9271
Fax: 1-888-845-2889
ameyers@ameyerslaw.com

1

*Identity of the Parties and Counsel*

The following is a list of all parties and all counsel who have appeared in this matter:

Relator:      Rosemary Margenau
Attorney for Relator in the trial court: Alison J. Meyers, 1601 Westheimer, Houston, Texas 77006, State Bar No. 24041477

Respondent: Honorable John Phillips

Real Party in Interest:      Texas Department of Family and Protective Services
Attorney for Texas Department of Family and Protective Services in the trial court:

Marc Ritter, 1019 Congress, 15th floor, Houston, Texas 77002, State Bar No. 16951500

Real Party in Interest:      George Margenau
Attorney for George Margenau in the trial court:
Juliane Phillips,
P.O.Box 10151, Houston, Texas 77026, State Bar No. 24000653

Real Party in Interest      K. B. H. and K. M. R.
Attorney Ad Litem in the trial court:
Patrick Shelton, 3600 Montrose, Ste 104, Houston, Texas, 77006, State Bar No 18208900

2

# Table of Contents

*Index of Authorities*:

*In re Cochran*, 151 S.W.3d 275 (Tex. App.- Texarkana 2004)                9

*In re Tonya Allen*, 359 S.W.3d (Tex. App.- Texarkana 2012)               9

Texas Constitution                                                        4

Texas Family Code                                                         7

Texas Government Code                                                     4

I. Statement of the Case                                                  4

II. Statement of Jurisdiction                                             4

III. Issue Presented                                                      4

IV. Statement of Facts                                                    5

V. Argument                                                               7

VI. Prayer                                                                9

Appendices The following documents are attached to this petition and incorporated in it for all purposes.

1.    Certified Copy of "Temporary Order Following Adversary Hearing dated August 26, 2015 signed by Respondent in Cause No. 2015-04673J.

2.    Reporter's Record Volume 1 of 1 Volumes in Cause No. 2015-04673J prepared and certified by Julia M. Rangel, 314th Court Reporter.

3.    Supplemental Reporter's Record Volume 1 of 1 Volumes prepared and certified by Julia M. Rangel, 314th Court Reporter

*Statement of the Case*

1. The underlying suit is a petition for protection of a child for conservatorship, and for termination of the parent-child relationship.

2. Respondent is Honorable John Phillips, Judge of the 314th Judicial Court of Harris County, Texas whose address is 1200 Congress, 5th floor, Houston, Texas 77006.

3. Evidence was factually and legally insufficient to support the Real Party in Interest, Department of Family and Protective Services (the "Department"), being named Temporary Managing Conservator of the children.

*Statement of Jurisdiction*

This Court has jurisdiction to issue a writ of mandamus under section 6 of article V of the Texas Constitution and section 22.221 (a), (b) of the Texas Government Code.

*Issue Presented*

Issue No. 1: Respondent abused his discretion in denying Relator's request to have the children returned home and naming the Department temporary managing conservator of the children because evidence presented at the adversary hearing was factually and legally insufficient pursuant to section 262.201 of the Texas Family Code.

*Statement of Facts*

On or about August 6, 2015, the Department filed an Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and Application for Writ of Attachment as to K. B. H. and K. M. R., and subsequently removed the children from their home and their parents' possession.

On August 25, 2015 in Cause No. 2015-2015-04673J Respondent held the adversary hearing required by Section 262.201 of the Texas Family Code. Testimony from the Department's investigator, Danitra Fields-Frazier, indicated that the reasons for the children coming into care included outcries from both children alleging sexual abuse, and Relator's refusal to cooperate with the Department. (Reporter's Record at 4-5; 11) The investigator testified that prior to filing the original petition, a "Safety Plan" was developed that required one of the alleged perpetrators, Troy Ready, to leave the home. (Reporter's Record at 9-10.) The "Safety Plan" did not include a date and time certain for the children to participate in a forensic interview at the Children's Assessment Center ("CAC"). (Reporter's Record at 10)

Danitra Fields-Frazier testified that to her knowledge Troy Ready was no longer living in the home as required by the Safety Plan. (Reporter's Record at 10) Testimony regarding Relator's refusal to cooperate with the Department

5

included allegations that the investigator made calls and left voice messages which were unanswered by Relator. (Reporter's Record at 11). Additionally, the investigator testified that attempts were made to visit the children in the home. (Reporter's Record at 11). The children were scheduled for a forensic interview at the CAC. (Reporter's Record at 5) However, they were not brought to CAC by the Relator for the interviews because the Relator believed the case to be closed. (Reporter's Record at 5)

Since coming into the care of the Department, K. B. H. has participated in a forensic interview at the CAC. (Reporter's Record at 10) An extended assessment is not required and the Department is recommending that the child participate in a psychological assessment (Reporter's Record at 10) K. M. R. was hospitalized to evaluate her mental stability and is currently placed in a Residential Treatment Central. (Reporter's Record at 7-8) As of August 25, 2015 K. M. R. had not participated in a forensic interview. (Reporter's Record at 10).

Relator requested that the children be returned to their home. (Reporter's Record at 20)

At the conclusion of the hearing Respondent made no rendition regarding his orders or findings regarding the requests of Relator and the Department. (Reporter's Record at 26) Respondent merely set the next hearing for this case. (Reporter's Record at 26)

*Argument*

A full adversary hearing was held on August 25, 2015. The purpose of the full adversary hearing is to determine if the Department will be named Temporary Managing Conservator of the child. Texas Family Code Section 262.201(b) sets out the burden the Department must show in order to be named Temporary Managing Conservator of the child:

> (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;
>
> (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and
>
> (3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

Respondent signed a "Temporary Order Following Adversary Hearing in Cause No. 2015-04673J dated August 26, 2015 appointing the Department as temporary managing conservator of K. B. H. and K. M. R.

The Department offered no evidence or testimony to support a finding under section (b)(1). A Safety Plan was established prior to filing this suit which required the removal of one of the alleged perpetrators, Troy Ready. The "Safety Plan" did not require the other alleged perpetrators, George Margenau and Stephen

7

Margenau, to vacate the home. The CPS caseworker testified that to her knowledge, the alleged perpetrator was no longer in living in the home. There was no testimony from the caseworker or the children's Attorney Ad Litem that there was a danger to the physical health or safety of the children by the other alleged perpetrators remaining in the home. In fact, the child K. B. H., participated in a forensic interview and made no outcry as to sexual abuse. The only testimony regarding the physical health of the children was in regard to K. M. H. and her purported mental health issues. Relator testified as to her attempts to address the child's purported mental health issues identified prior to this lawsuit. The Department and the children's Attorney Ad Litem recommended that the child, K. M. H., continue to be evaluated to assess her mental health. However, the Department offered no testimony with regard to the danger either child would face if returned home while the necessary evaluations were conducted. Danita Fields-Frazier testified that the children were scheduled for a forensic interview regarding the allegations of sexual abuse. However, the children were not brought for the interview by the Relator and the Department testified as to numerous attempts to contact the Relator regarding the interview and to subsequent attempts to see the children in the Relator's home. As a matter of law, the trial court could not have made the requisite findings for appointing the Department Temporary Managing Conservator because the Court had no evidence pertaining to the danger to the

8

physical health or safety of the children. *See In re Cochran*, 151 S.W.3d 275, 280 (Tex. App-Texarkana 2004) (explaining that in the absence of any current conditions or actions that would constitute a danger to the child's health or safety, the trial court could not have reasonably based its findings on prior terminations alone).

The Department's investigator, Danitra Fields-frazier, offered no testimony or evidence as to the reasonable efforts under the circumstances for the children to remain in the home pursuant to Section (b)(2) or as to the reasonable efforts made to permit the children to return home pursuant to Section (b)(3). *See In re Tonya Allen*, 359 S.W. 3d 286, 291 (Tex. App – Texarkana 2012) (finding insufficient evidence to support trial court's findings under Section 262.201(b)(2) and (b)(3)).

*Prayer*

Realtor prays that this Court issue its writ of mandamus commanding the

trial court to vacate the order of August 26, 2015.

/s/ *Alison J. Meyers*
Alison J. Meyers
Attorney for Relator
State Bar No.: 24041477
1601 Westheimer Rd.
Houston, Texas 77006
Ph.: 713-859-9271
Fax: 1-888-845-2889
ameyers@ameyerslaw.com

## Certification

I certify that I have reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record filed with this Court.

/s/*Alison J. Meyers*
Alison J. Meyers

# Certificate of Service

I certify that a true copy of this Petition for Writ of Mandamus was served in accordance with rule 9.5 of the Texas Rules of Appellate Procedure on each party or that party's lead counsel as follows:

Party: Honorable John Phillips, Respondent
Address of service: 1200 Congress, 5th Floor, Houston, Texas 77002
Method of service : by mail
Date of service: September 10, 2015

Party: The Department of Family and Protective Services
Lead Attorney: Marc Ritter
Address of service: 1019 Congress, 15th Floor, Houston, Texas 77002
Method of service: by fax
Date of service: September 10, 2015

Party: George Margenau
Lead Attorney: Juliane Phillips
Address of service: P.O. Box 10151, Houston, Texas 77026
Method of service: by mail
Date of service: September 10, 2015

Party: K. B. H. and K. M. R.
Attorney Ad Litem: Patrick Shelton
Address of service: 3600 Montrose, Ste. 104, Houston, Texas 77006
Method of service: by mail
Date of service: September 10, 2015

A copy of this notice is being filed with the appellate clerk in accordance with rule 25.1(e) of the Texas Rules of Appellate Procedure.

*/s/Alison J. Meyers*
Alison J. Meyers

11

*Appendix A:*

This appendix contains the following:

1.      Certified Copy of "Temporary Order Following Adversary Hearing dated August 26, 2015 signed by Respondent in Cause No. 2015-04673J.

2.      Reporter's Record Volume 1 of 1 Volumes in Cause No. 2015-04673J prepared and certified by Julia M. Rangel, 314th Court Reporter.

3.      Supplemental Reporter's Record Volume 1 of 1 Volumes prepared and certified by Julia M. Rangel, 314th Court Reporter

# APPENDIX A

1



8/6/2015 12:04:02 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 6383275
By: EVERS, LONNA K
Filed: 8/6/2015 12:04:02 PM

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

DANITRA Y. FIELDS-FRAZIER 600-2
JENNIFER BOOTH 600-2

CAUSE NO. _____

| IN THE INTEREST OF | IN THE DISTRICT COURT OF |
|---|---|
| | HARRIS COUNTY, TEXAS |
| CHILDREN | _____ JUDICIAL FAMILY/JUVENILE DISTRICT |

### TEMPORARY ORDER FOLLOWING ADVERSARY HEARING

On ___9-25-2015___, a full adversary hearing pursuant to §262.201 or 262.205, Texas Family Code, was held in this cause.

**1.    Appearances**

1.6.    The Department of Family and Protective Services ("the Department") appeared through **DANITRA Y. FIELDS-FRAZIER**, caseworker, and by attorney **STEPHANIE EWING** and announced ready.

1.7.    Respondent MOTHER **ROSEMARY MARGENAU**
☐ appeared in person and announced ready.
☐ appeared through attorney of record and announced ready.
☒ appeared in person and through attorney of record and announced ready. *Allison Meyers*
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

1.8.    Respondent FATHER **GEORGE MARGENAU**
☐ appeared in person and announced ready.
☐ appeared through attorney of record and announced ready.
☒ appeared in person and through attorney of record and announced ready. *Juli Crow*
☐ waived issuance and service of citation by waiver duly filed.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear and wholly made default.
☐ was not notified, and did not appear.

(ginad)
August 6, 2015

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging.

1.9. _Pat Shilton_ , appointed by the Court as Attorney and Guardian Ad Litem of the children the subject of this suit,
☒ appeared and announced ready.
☐ agreed to the terms of this order as evidenced by signature below.
☐ although duly and properly notified, did not appear.

1.10. Also Appearing _____

_____

_____

## 2. Jurisdiction

The Court, after examining the record and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been satisfied and that this Court has jurisdiction of this case and of all the parties.

## 3. Findings

3.1. The Court finds there is sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person entitled to possession and for the children to remain in the home is contrary to the welfare of the children; (2) the urgent need for protection required the immediate removal of the children and makes efforts to eliminate or prevent the children's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the children's removal and enable the children to return home, there is a substantial risk of a continuing danger if the children are returned home.

3.2. The Court finds sufficient evidence to satisfy a person of ordinary prudence and caution that there is a continuing danger to the physical health or safety of the children and for the children to remain in the home is contrary to the welfare of the children.

3.3. The Court finds with respect to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓AND/OR ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that reasonable efforts consistent with the children's health and safety have been made by the Department to prevent or eliminate the need for removal of the children from the home and to make it possible for the children to return home, but that continuation in the home would be contrary to the welfare of the children.

3.4. The Court finds that the following orders for the safety and welfare of the children are in the best interest of the children.

(ginad)
August 6, 2015

Certified Document Number: 66946748 - Page 2 of 9
For Official Governmental Use Only - Do Not Disseminate to the Public: 66514602 - Page 2 of 9

## 4. Appointment of Counsel for Parents or Parties

4.1. ~~The~~ Court finds that **ROSEMARY MARGENAU is/ is not indigent.** Based on the ~~finding that~~ **ROSEMARY MARGENAU** is not indigent and pursuant to §107.015 of ~~the Texas~~ Family Code, **IT IS ORDERED** that **ROSEMARY MARGENAU** is ~~responsible to pay~~ a reasonable fee in the amount set by the Court by separate order to the attorney ad ~~litem appointed~~ to represent the children, ████████ ████████ ██████ **AND/OR** ████████████ ██████.

4.2. ~~The~~ Court finds that **GEORGE MARGENAU is/ is not indigent.** Based on the ~~finding that~~ GEORGE MARGENAU is not indigent and pursuant to §107.015 of the Texas Family ~~Code, IT IS ORDERED~~ that **GEORGE MARGENAU** is responsible to pay a reasonable ~~fee in the~~ amount set by the Court by separate order to the attorney ad litem appointed to represent ~~the children,~~ ████████ ████████ █████ **AND/OR** █████████████ ██████

The Court makes no finding with regard to the indigency of Respondent~~s~~ _____ because said Respondent~~s~~ is/not presently before the Court and/or insufficient information is available to make such a determination at this time.

## 5. Appointment of Single Counsel for Both Parents

The Court finds that the interests of both indigent parents who have responded in opposition to the termination of the parent-child relationship are not in conflict, and therefore has appointed a single attorney *ad litem* to represent the interests of both parents.

## 6. Conservatorship

6.1. **IT IS ORDERED** that the Department of Family and Protective Services is appointed Temporary Managing Conservator of the following children:

| | |
|---|---|
| Name: | ██████████████████ |
| Sex: | **FEMALE** |
| Date for Birth: | ████████████ |
| Indian Child Status: | **UNKNOWN** |

| | |
|---|---|
| Name: | ██████████████████ |
| Sex: | **FEMALE** |
| Date for Birth: | ████████████ |
| Indian Child Status: | **UNKNOWN** |

6.2. **IT IS ORDERED** that the Temporary Managing Conservator shall have all the rights and duties set forth in §153.371, Texas Family Code.

Certified Document Number: 66946748 - Page 3 of 9
For Official Governmental Use Only - Do Not Disseminate to the Public: 66514602 - Page 3 of 9

Certified Document Number: 66946748 - Page 4 of 9
For Official Governmental Use Only - Do Not Disseminate to the Public: 66514602 - Page 4 of 9

6.2.1.   **IT IS ORDERED** that in addition to the rights and duties listed in §153.371, Texas Family Code, the Department its employee or designee is authorized to consent to medical care of the subject children, pursuant to §266.004, Texas Family Code.

OR

The Court authorizes _____ to consent to medical care of the subject children, pursuant to §266.004(b)(1), Texas Family Code. This authorization is limited to the provision of medical care services provided by the Medicaid program.

6.3.   The Court finds that it is in the best interest of the children to limit the rights and duties of each parent appointed as a temporary possessory conservator.

6.4.   The Court makes no finding at this time with regard to the appointment of a Temporary Possessory Conservator.

[or]

6.5.   **IT IS THEREFORE ORDERED** that _____ is appointed Temporary Possessory Conservator of the child, ████████████ ████████, with the limited rights and duties set forth below.

6.6.   **IT IS THEREFORE ORDERED** that _____ is appointed Temporary Possessory Conservator of the child, ████████████ ████████, with the limited rights and duties set forth below.

7.   **Rights and Duties of Temporary Possessory Parents**

7.1.   Each Temporary Possessory Conservator *Parent* appointed in this Order shall have the following rights:

7.1.1.   the right to receive information concerning the health, education, and welfare of the children;

7.1.2.   the right to access to medical, dental, psychological, and educational records of the children;

7.1.3.   the right to consult with a physician, dentist, or psychologist of the children;

7.1.4.   the right to consult with school officials concerning the children's welfare and educational status, including school activities;

Certified Document Number: 66946748 - Page 5 of 9
For Official Governmental Use Only - Do Not Disseminate to the Public: 66514602 - Page 5 of 9

7.1.5.   the right, during times of unsupervised possession, to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the children;

7.1.6.   the right, during times of possession, to direct the moral and religious training of the children;

and the right to _____

_____

_____

_____

*PARENT*

7.2.    Each Temporary Possessory Conservator appointed in this Order shall have the following duties:

7.2.1.   the duty, during periods of possession of the children which are not supervised by the Department or its designee, of care, control, protection, and reasonable discipline of the children;

7.2.2.   the duty to support the children, including providing the children with clothing, food, and shelter during periods of possession of the children which are not supervised by the Department or its designee;

and the duty to _____

_____

_____

_____

**7.3.    Possession of and Access to the children**

7.3.1.   The Court finds that the application of the guidelines for possession of and access to the children, as set out in Subchapter F, Chapter 153, Texas Family Code, is not in the children's best interest. **IT IS ORDERED** that the parents named as temporary possessory conservators of the children shall have limited access to and possession of the children as set forth below.

The Court finds that the parents shall have the right to visitation with the children in accordance with the policy established by Department of Family and Protective Services and at all other times mutually agreeable to the Temporary Managing Conservator and the parents of said children.

[or]

Certified Document Number: 66946748 - Page 6 of 9
For Official Governmental Use Only - Do Not Disseminate to the Public: 66514602 - Page 6 of 9

7.3.2.  ~~IT IS ORDERED that each Temporary Possessory Conservator appointed in this Order shall have visitation with the children as follows:~~

## 8. Child Support

The Court finds that the parents have a duty to support the child the subject of this suit.

~~IT IS ORDERED that child support shall be paid as set out in Exhibit A attached hereto and incorporated fully herein.~~

[or]

The Court makes no finding at this time with regard to the payment of child support.

**IT IS ORDERED** that any child support ordered to be paid for the support of the children as a result of any prior court order be ordered to be redirected and paid to the Texas Department of Family and Protective Services.

## 9. Release of Medical and Mental Health Records

**IT IS ORDERED** that Respondents **ROSEMARY MARGENAU** and **GEORGE MARGENAU** execute an authorization for the release of Respondents', and the children's (if needed) past, current or future medical and mental health records to the Department from all physicians, psychologists, or other health care professionals, who have treated Respondents or their children which information the Department shall be authorized to share with all other groups or persons it deems necessary; and to further provide the Department with a list of the names and addresses of all physicians, psychologists, or other healthcare providers who have treated Respondents or the children. Respondents shall execute the authorization and deliver it, together with the list of physicians, psychologists, or other healthcare providers, to the Department within 15 days of the date of this hearing.

## 10. Required Home Study

10.1.  The Court finds that Respondent Mother, **ROSEMARY MARGENAU, has/has not** submitted the Child Placement Resources Form required under §261.307, Texas Family Code.

10.2.  The Court finds that Respondent Father, **GEORGE MARGENAU, has/has not** submitted the Child Placement Resources Form required under §261.307, Texas Family Code.

10.3. **IT IS ORDERED** that each Parent, Alleged Father or Relative of the subject children before the Court submit the Child Placement Resources Form provided under §261.307, if the form has not previously been provided and provide the Department and the Court the full name and current address or whereabouts and phone number of any and all relatives of the subject children the subject of this suit with whom the Department may place the subject children during the pendency of this suit, pursuant to § 262.201, Texas Family Code.

10.4. **IT IS ORDERED** that the Department shall continue to evaluate substitute caregiver options until the Department identifies a relative or other designated individual qualified to be a substitute caregiver.

10.5. **IT IS ORDERED** that the Department shall conduct a home/social study on _____, if preliminary criminal and CPS background checks of all members of the household age 14 and up are favorable

11. **Finding and Notice**

**The Court finds and hereby notifies the parents that each of the actions required of them below are necessary to obtain the return of the children, and failure to fully comply with these orders may result in the restriction or termination of parental rights.**

12. **Compliance with Service Plan**

12.1. **ROSEMARY MARGENAU** is **ORDERED**, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.

12.2. **GEORGE MARGENAU** is **ORDERED**, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.

12.3. IT IS FURTHER ORDERED that:

_____

_____

_____

_____

_____

12.4. The court finds that this order, as supplemented by the service plan to be approved at the Status Hearing under Texas Family Code §263.201, sufficiently defines the rights and duties of the parents of the child pursuant to Texas Family Code §153.602 and satisfies the requirements of a parenting plan. To the extent there is evidence demonstrating that the children have been exposed to harmful

Certified Document Number: 66946748 - Page 7 of 9
For Official Governmental Use Only - Do Not Disseminate to the Public: 66514602 - Page 7 of 9

parental conflict, the court orders that the Department address this issue in the Family Plan of Service.

## 13. Required Information

13.1. **IT IS ORDERED** that each Respondent to this cause provide to the Department and the Court, no later than thirty days from the date of this hearing, the information detailed below.

13.2. **IT IS ORDERED** that each Respondent to this cause provide to the Department and the Court the full name and current address or whereabouts and phone number of any absent parent of the children the subject of this suit, pursuant to Rule 194, Texas Rules of Civil Procedure.

13.3. **IT IS ORDERED** that each Respondent to this cause submit the Child Placement Resources Form provided under §261.307, Texas Family Code, if the form has not been previously provided and provide to the Department and the Court the full name and current address or whereabouts and phone number of any relative of the children the subject of this suit with whom the Department may place the children during the pendency of this suit, pursuant to Rule 197, Texas Rules of Civil Procedure. and §262.201(e), Texas Family Code.

13.4. **IT IS ORDERED** that each Parent furnish information sufficient to accurately identify that parent's net resources and ability to pay child support along with copies of income tax returns for the past two years, any financial statements, bank statements, and current pay stubs, pursuant to Rule 196, Texas Rules of Civil Procedure., and §154.182, Texas Family Code.

13.5. **IT IS ORDERED** that each Respondent provide the Department and the Court information sufficient to establish the parentage and immigration status of the children, including but not limited to marriage records, birth or death certificates, baptismal records, social security cards, records of lawful permanent residence ("green cards"), naturalization certificates, and any other record of the United States Citizenship and Immigration Services and records of Indian ancestry or tribal membership.

13.6. **IT IS ORDERED** that each Respondent furnish to the Department all information necessary to ensure the Department has an adequate medical history for the children, including but not limited to the immunization records for the children and the names and addresses of all treating physicians.

13.7. **IT IS ORDERED** that each Respondent provide the Department information regarding the medical history of the parent and parent's ancestors on the medical history report form, pursuant to §161.2021, Texas Family Code.

Certified Document Number: 66946748 - Page 8 of 9
For Official Governmental Use Only - Do Not Disseminate to the Public: 66514602 - Page 8 of 9

13.8. **IT IS ORDERED** that each Respondent to this cause provide to the Department and the Court a current residence address and telephone number at which each can be contacted.

13.9. **IT IS ORDERED** that each Respondent to this cause notify the Department and the Court of any change in his or her residence address or telephone number within five (5) days of a change of address or telephone number.

14. **Dismissal Date and Notice of Status Hearing**

Pursuant to §263.306(11), Texas Family Code, the Court determines that the date for dismissal of this cause shall be _____ 8-8-15 _____.

IT IS ORDERED that this cause is set for a Status Hearing, pursuant to § 263.201 Texas Family Code, on _____ 10-1-2015 _____ at _____ 9:00 _____ o'clock a.m. in the 314 Judicial District Court of Harris County in Houston, Texas.

15. All said **TEMPORARY ORDERS** shall continue in force during the pendency of this suit or until further order of the Court.

SIGNED this _____ day of _____, 2015.

SIGNED this 24 day of _____ May _____, 2015.

_____
MASTER OF THE COURT

_____
JUDGE PRESIDING

Certified Document Number: 66946748 - Page 9 of 9
For Official Governmental Use Only - Do Not Disseminate to the Public: 66514602 - Page 9 of 9

(ginad)
August 6, 2015



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seai of office
this   September 9, 2015

Certified Document Number:        66946748 Total Pages:  9

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# APPENDIX A

## 2

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
CAUSE NO. 2015-04673J

IN THE INTEREST OF    ) IN THE DISTRICT COURT
           )
           ) HARRIS COUNTY, TEXAS
           )
           )
CHILDREN        ) 314TH DISTRICT COURT

*********************************

SHOW CAUSE HEARING

*********************************

On the 25th day of August, 2015 the following proceedings came on to be heard in the above-entitled numbered cause before the Honorable John Phillips, Judge presiding, held in Houston, Harris County, Texas.

Proceedings reported by Computerized Stenographic Machine Method.

ORIGINAL

A P P E A R A N C E S

Mr. Marc Ritter
SBOT: 165951500
ASSISTANT COUNTY ATTORNEY
1019 Congress, 17th Floor
Houston, Texas 77002
Telephone: 713-274-5232
Counsel for T.D.F.P.S.

Mr. Patrick Shelton
ATTORNEY AT LAW
SBOT NO. 18208900
3600 Montrose, Suite 104
Houston, Texas 77006
Telephone: 832-216-5909
Counsel for The Children

Ms. Alison Meyers
ATTORNEY AT LAW
SBOT NO. 24041477
1601 Westheimer Road
Houston, Texas 77006
Telephone: 713-859-9271
Counsel for Respondent Mother Rosemary Margenau

Ms. Juli Crow
ATTORNEY AT LAW
SBOT NO. 24000653
P. O. Box 10152
Houston, Texas 77206-0152
Telephone: 281-382-1395
Counsel for Respondent Father George Margenau

# I N D E X
## VOLUME 1
### (SHOW CAUSE HEARING)

August 25, 2015                                    Page    Vol.

Announcements................................... 4       1

| Petitioner's Witness | Direct | Cross | Vol. |
|---|---|---|---|
| **DANITRA FIELDS-FRAZIER** | 4-12 | | 1 |
| By Ms. Meyers | | 9 | 1 |
| By Ms. Crow | | 13 | 1 |

| Respondent's Witness | Direct | Cross | Vol. |
|---|---|---|---|
| **ROSEMARY MARGENAU** | 16 | | 1 |
| By Mr. Ritter | | 21 | 1 |
| By Mr. Shelton | | 22 | 1 |

Adjournment..................................... 26      1

Court Reporter's Certificate.................... 27      1

P R O C E E D I N G S

MR. RITTER: Your Honor, we're at a show cause hearing in 2015-04673J in the interest of ▪▪▪▪▪ ▪▪▪▪▪ ▪▪▪▪ and ▪▪▪▪▪ ▪▪▪▪ ▪▪▪▪. Marc Ritter representing the department, caseworker is Danitra Fields-Frazier. The ad litem Mr. Shelton. Mom is present with her retained attorney Alison Meyers. And Julie Crow is present representing the father George Margenau. Call the caseworker.

DANITRA FIELDS-FRAZIER

Having first been duly sworn, testified as follows:

D I R E C T   E X A M I N A T I O N

BY MR. RITTER:

Q    Ma'am, will you state your name for the record?

A    Danitra Fields-Frazier.

Q    All right. And you're the caseworker for these two children?

A    Yes.

Q    Can you tell the judge what the referral was in this case?

A    Allegations of sexual abuse by -- on ▪▪▪▪▪▪▪ by her grandfather and her two uncles.

Q    Okay. And were there also allegations with respect to ▪▪▪▪▪▪?

A     No.

Q     All right.  And did you do an investigation?

A     Correct.  Yes.

Q     All right.  And as part of the -- beginning of this case, you attempted to get the mother to take the children for forensic interviews; is that correct?

A     Yes.

Q     All right.  Did she -- was she compliant with that?

A     No.

Q     Did she say why she wasn't being compliant with that?

A     She thought the case was closed.

Q     Okay.  And did you talk to the children?

A     Yes.

Q     And what disclosure did they make regarding the sexual abuse allegations?

A     ██████ didn't make a disclosure.  ██████ stated that her father Troy Ready licked her private area with his tongue.

Q     Okay.  And that was a -- something that happened recently, according to her disclosure; is that correct?

A     Correct.

Q     All right.  And with respect to ██████, the original allegations came from a rumor at school; is that

correct?

A    Correct.

Q    And ████ was allegedly telling her friends that she had been sexually molested; is that correct?

A    Correct.

Q    All right. But when you talked to her, she actually ended up not making any --

A    Correct.

Q    So you're asking for a forensic interview and for the agency be named temporary managing conservator?

A    Correct.

Q    Did -- does ████ have any mental health problems? The oldest child?

A    She has not had her psychological yet.

Q    Okay. And -- but when you talked to her, did she -- was there any concerns for you about her mental health?

A    She seems a little delayed.

Q    Okay. And how about ████?

A    Yes.

Q    Okay.

A    ████ has been diagnosed.

Q    And in fact, part of your investigation, you talked to the child and she wanted her sister to be moved out of the home; is that correct?

A    Correct.  She wanted her room.  Yes, sir.

MS. MEYERS:  Objection.  Calls for hearsay.

THE COURT:  Your objection's overruled.  I'm waiting for you to tell me about the case, Pat.

MR. SHELTON:  Let me -- any objection to offering these into evidence?  Pictures.

MR. RITTER:  No objection.

MR. SHELTON:  This is ████ ████.  She's basically seven, going on eight years old.  She's in a mental health hospital now.

CASEWORKER:  She was moved.

MR. SHELTON:  Okay.  She was at Intracare north when I saw her.  And this is ████ ████ who's eleven going on twelve.

Both children need to have a forensic interview by a professional regarding sexual abuse allegations regarding activity in the home with several individuals.  They both need mental health evaluations.  ████ ████, the older child, supposedly made comments to more than one person at school, two is listed in the affidavit.  So the issue is why would somebody be, number one, making up a story of this nature.

CASEWORKER:  Correct.

MR. SHELTON:  And number two, we want to know if there's any merit to it.  And in regards to the younger

child, she has some definite mental health issues. In talking with her, she is off the wall in a number of different areas. Just scattered thinking. She was kicked out of three elementary schools, according to the affidavit, and then they were doing the home schooling, which of course, means no schooling. So we've got some major issues now.

These folks who are here who are the adoptive parents, adoptive mother here is 70, adoptive father is 75. But part of the allegation is against the father of the younger child. So we need to definitely see if there's a law enforcement aspect to this case before we return the children to any of these individuals named.

THE COURT: Okay.

MR. SHELTON: This child is very articulate, very pleasant. Good foster home and --

THE COURT: Where are the children?

MR. SHELTON: Well this one, when I saw her on Saturday, was at Intracare north and she was in the Spring area of town in a foster home. They have -- this is a two-parent home with a nine year old sibling and they were getting along very well. Arrow family. And the current placement for the younger one, if you want to tell the judge.

CASEWORKER: She's in St. Claire. She's in

RTC. St. Claire something.

MR. SHELTON: And I would like to go visit that because my experience with -- this child is young for an RTC compared to most kids who are there; is that correct?

CASEWORKER: Well when I dropped her off last night, there were, there were kids there her age and they're only holding her until the foster home is available.

MR. SHELTON: I would recommend she be placed in foster care. When I was at Intracare, I had another client there, but it was mostly older kids and there's some interaction problems, just based on the age, so -- at that psychiatric hospital, which is similar to most RTC's. So any foster home, I would go visit her, would be preferable.

THE COURT: Okay. What else? Questions?

MR. RITTER: I have no further questions, Judge.

MS. MEYERS: Yes, Your Honor. I have just a couple of questions.

CROSS EXAMINATION

BY MS. MEYERS:

Q    Prior to filing the lawsuit, was a safety plan developed with the family?

A    Yes.

Q    Okay. And what did that include?

A    Troy Ready to leave the home. No contact with

████████ or ████████.

Q    Okay.  And to your knowledge, was Trevin moved from the home?

A    Troy?

Q    I apologize.  Troy.

A    To my knowledge.

Q    Okay.  And to your knowledge, is he living there now?

A    I don't know.

Q    Okay.  As part of that plan, did you also agree that the girls would participate in forensic interviews?

A    Not part of the plan.  We verbally agreed.

Q    Okay.  And has ████████ participated in a forensic interview?

A    Yes.

Q    Okay.  And if you know, what were the recommendations of it?

A    Don't know what the recommendations --

Q    Okay.  So she's not to participate in an extended assessment; is that correct?

A    No.  We just gonna -- she's gonna have a psychological.

Q    Okay.  And with regard to ████████, has a forensic interview been scheduled for her?

A    No.

Q    Is she seeing a doctor now?

A    She was seeing a doctor while she was in the hospital.

Q    Okay.  And you testified that, that the children were not brought to their forensic interview; is that correct?

A    Correct.

Q    And is -- and that was the major reason for you bringing this lawsuit against the parents; is that correct?

A    No.

Q    What is the major reason then?

A    The father called me, asked me could he return to the home and I told him no; and then Ms. Ready would not cooperate or communicate with me.  Or allow me to see the children or to confirm if he had moved back into the home or not.

Q    Okay.

A    I mean Ms. Margenau.  I'm sorry.

Q    And were those through phone calls or?

A    I called the home.  I left several messages.  I visited the home several times with the police officers and she would not open the door, although I heard the children inside the home on one occasion.

Q    Okay.  And do you have records of those instances where you came to the home with the police?

A    Yes.

Q    Did you bring those to court with you today?

A    I did not.  But it's in the affidavit, I believe.

Q    All right.

        MS. MEYERS:  Your Honor, I pass the witness.

            D I R E C T   E X A M I N A T I O N

BY MR. RITTER:

Q    Based on the overall circumstances of this case, why not a extended forensic with respect to ████████?

A    Because she --

        MS. MEYERS:  Objection.  Calls for expert --

        THE COURT:  Your objection's overruled.

Q    (By Mr. Ritter) Go ahead and answer?

A    Okay.  Because she didn't make a disclosure in the forensic.

Q    Okay.

A    I mean she was --

Q    At least according to the affidavit, there were two sources that --

A    Correct.

Q    -- she made statements that she was being sexually abused; is that correct?

A    Correct.

        MS. MEYERS:  Objection.

A    But she was sexually abused in the previous case.

Julia M. Rangel, 314th Court Reporter
713-222-4910

MR. RITTER: Pass the witness, Judge.

C R O S S   E X A M I N A T I O N

BY MS. CROW:

Q    You suggested that the father was asking to come home. Which father was that?

A    ██████ ████'s father, the alleged perpetrator.

Q    Was this father, standing next to me here, was he involved in the house at all at this time? Did you have any contact with him?

A    No, he was not.

Q    Do you know if he was living in the same home at the time?

A    Yes, he was.

Q    Okay. Thank you.

MS. CROW: Pass the witness.

THE COURT: Okay. What else?

MR. SHELTON: Nothing further.

MR. RITTER: Nothing else, Judge.

MS. MEYERS: Your Honor?

THE COURT: I kind of want to make sure I understand a little bit. It seems that the -- these two kids were adopted, which they're relatives? Relatives?

CASEWORKER: Paternal grandparents.

THE COURT: Grandparents.

MR. SHELTON: These folks right here.

CASEWORKER: Her paternal grandparents. She's not related to ████████.

THE COURT: I'm sorry?

CASEWORKER: She's not related to ████████. She's her paternal grandparent.

MR. SHELTON: And when you read the affidavit, they mention father, uncle, grandfather. It's a little hard to know who they're referring to in these allegations, so that's why I'd like to make sure we get to the bottom. Cause one of them, Steven Morgan, though, is an uncle who is --

SPEAKER: My son.

MR. SHELTON: Yeah. His son.

THE COURT: Here's what I want to know to start with is, why were their parent's rights terminated originally?

CASEWORKER: I wasn't the original investigator back in 2013. I believe there was some drug use and allegations of sexual abuse on ████████'s biological father.

THE COURT: And what is his name?

CASEWORKER: David -- it's in the affidavit. I want to say David Garza but I'm not really sure. David Hanks. I'm sorry.

THE COURT: Okay. Here's a name here. It

says David Puente. Parental rights of Troy Ready, David Puente and Michelle Lee Hanks were terminated February 14th, 2012; is that this case?

CASEWORKER: Yes.

THE COURT: So these little girls had two different fathers. A Troy and a David.

CASEWORKER: Correct.

THE COURT: Okay. And are you saying that part of the termination had to do with sexual assault in the first case?

CASEWORKER: David sexually assaulted Krysta.

THE COURT: Was there --

CASEWORKER: I believe.

THE COURT: Was there law enforcement involvement in that case?

CASEWORKER: Yes.

THE COURT: Did the person --

CASEWORKER: From what?

THE COURT: Did he get convicted?

CASEWORKER: From what I recall from the case, he's currently in jail.

THE COURT: Okay. Well is that the only one that it was alleged that committed sexual assault against one or both of the girls, this guy David?

CASEWORKER: Yes.

THE COURT: Not Troy?

CASEWORKER: Not Troy.

THE COURT: Okay. So the new allegations involve Troy.

CASEWORKER: Correct.

THE COURT: Okay. What else do we need to talk about?

MR. RITTER: Status hearing, Judge.

THE COURT: I'm sorry? Okay.

MS. MEYERS: Your Honor, may I call my client?

THE COURT: If you want, sure.

MS. MEYERS: Thank you. Like to call my client.

ROSEMARY MARGENAU

Having first been duly sworn, testified as follows:

BY MS. MEYERS:

Q State your name for the record, please.

A Rosemary Margenau.

Q And Ms. Margenau, you are the adoptive mother of the two children ████████ and ███████; is that correct?

A Yes, ma'am.

Q Okay. And at one time, did you and CPS reach a safety plan regarding the children?

A    She just said that --

Q    Did you -- ma'am, did you agree to have Troy leave the home?

A    Oh yes.

Q    Okay.  Due to allegations of sexual abuse; is that correct?

A    Yes.

Q    And did Troy leave the home?

A    Yes, he did.

Q    And is he in the home now?

A    No.

Q    Okay.  And did you become aware that the department wanted to schedule forensic interviews of the girls?

A    No.

Q    Okay.  If -- are you aware that CPS made several contacts to your home regarding CPS -- a forensic interview?

A    No.

Q    Okay.  If you had known that CPS wanted the girls to participate in a forensic interview, would you have complied?

A    Yes, sir.

Q    Would you have?

A    Yes, ma'am.

Q    Would you have brought them to the CAC for the

interview?

A   Yes, I would.

Q   Okay.  And why is that?

A   I've done it before with ██████.

Q   Okay.  What do you mean you've done it before with ██████?

A   ██████ was assessed at the Children's Assessment Center when she was placed in my care during -- before I adopted her.  And I took her for about six weeks on every Thursday.

Q   Okay.  Now you also heard testimony that ██████ was in the hospital; is that correct?

A   Yes.

Q   And do you know why she was in the hospital?

A   Ms. Frazier, Ms. Frazier said that -- she had -- the doctor said she had psychosis.

Q   Okay.  Now prior to ██████ being removed from your home, did ██████ exhibit behaviors requiring hospitalization?

A   No.

Q   You also heard some testimony from Mr. Shelton regarding ██████ being kicked out of school, that's correct, correct?

A   No.

Q   Well it's correct your heard the testimony?

A     Yes.

Q     And has ██████ been kicked out of schools?

A     No.

Q     Did she exhibit behavior at school and it was recommended to you that she needed to be hospitalized?

A     Pine Forest Elementary recommended ██████ be put in a hospital because they said that she wanted to kill herself.

Q     Okay.  And so what did you do based upon that recommendation from the school?

A     I talked to the school about counseling and everything and I told them that ██████ would never say anything like that.  And the -- then a CPS investigator came out the very next day and she talked to me and then she went back to Pine Forest to talk to them.  And then the CPS investigator said that from her findings that Pine Forest Elementary did not want her in their school.

Q     Okay.  And was there ever the recommendation that ██████ be hospitalized after the investigation?

A     No.  The CPS investigator said she was doing real good and that she didn't need to be in the hospital.

Q     Okay.  In your experience with ██████ then, what kind of behavior would you anticipate that she would have after being removed from your home?

MR. RITTER:  Objection.  Calls for

speculation, Judge.

THE COURT: Overruled.

Q    (By Ms. Meyers) You can answer.  So your experience with ███████, what type of -- based upon your experience with ███████, what kind of behavior would you anticipate from her if she were -- after being removed from your home?  Would she act out?

A    Say that again.

Q    Would ███████ be upset after being removed from your home?

A    Oh yes.

Q    Okay.  Would you anticipate that she would exhibit behave -- certain behaviors?

A    Yes.

Q    What kind of behaviors do you think she would exhibit?

A    Crying, yelling, wanting to go back home.

Q    Okay.  And just to confirm, Troy is not in your home; is that correct?

A    That's right.

Q    Okay.  And so are you asking that the girls be returned to your home?

A    Yes, I am.

Q    Okay.  And you've heard some testimony that ███████ may need to be evaluated.  Would you agree to have

evaluated to see if she does have some mental health issues?

A     Yes.

Q     In the event the Judge does not return the girls to your home and he grants the State's request to be temporary managing conservators, are you asking that you be permitted to visit ███████?

A     Yes.

Q     Are you asking that you be permitted to visit ███████?

A     Yes.

                    MS. MEYERS:   Pass the witness.

                C R O S S   E X A M I N A T I O N

BY MR. RITTER:

Q     Ma'am, when did the school tell you that ███████ had some mental health issues?

A     Last year.

Q     Okay.  Have you taken her to a doctor since then to have her evaluated on your own?

A     No.  Placed her in Oak Forest Elementary School and they said that she was okay.

Q     Okay.

A     And then -- okay.  I'm sorry.

Q     All right.  So she has been kicked out of three schools; is that correct?

A     No.

Q     Okay.  She's been to three separate schools; is that correct?

A     Yes.  I took ████ -- ████ out of school and placed her in Oak Forest and I called the assistant superintendent at school for investigation of Pine Forest Elementary.

Q     Okay.  And she's being home schooled now?

A     Well she was.

Q     Okay.

MR. RITTER:  I pass the witness, Judge.

C R O S S   E X A M I N A T I O N

BY MR. SHELTON:

Q     Ma'am, did she also go to Summerwood Elementary School?

A     Yes.

Q     And why did she leave there?

A     I took her out of that school because they were squeezing her real hard and I don't think that's right.  And she was -- and there was a older boy there and he knocked her down on the floor real, real hard and she said it hurt her real bad.  I talked to the teacher about it and they -- the assistant principal removed the boy from that school.

Q     What grade is ████?

A     First.

Q     Where did you get your materials from for her home schooling?

A     The materials from home schooling?  Mercer Homes that I was gonna go to.

Q     And when's the last time ████████ has seen her father?

A     Since he left home.

Q     And his name is Troy, right?

A     Yes.

Q     And he left home when?

A     That day Ms. Frazier came.

Q     And that day was how long ago?  Week or two?

A     Oh no.  Long time.

Q     You tell me.

A     It was May of this year.

Q     And he is your what?

A     Oldest son.

Q     Okay.  And after his rights were terminated, he still lived in the home with his daughter?

A     Temporarily.

Q     Temporarily since 2012?

A     Well his rights were terminated to take -- to have possession of the child.

Q     That was three years ago?

A     Yes.

Q     So since then, he's been in your home?

A     No.  He didn't come home until latter part of December.

Q     Of what year?

A     Of last year.

Q     Okay.  So you think you want us to do a mental health evaluation on ██████, the younger one here, right?

A     What did you say?

Q     You want us to do a mental health evaluation. Something is not right.  You'd agree with that, right?

A     Yes.

Q     I mean she's not a normal child who's able to go to school without problems.  You'd agree with that, right?

A     Well if they -- if the teachers wouldn't squeeze her legs or the assistant principal wouldn't knock her off the cabinet onto the floor, or if they wouldn't abuse her in Summerwood School, but they didn't abuse her at Oak Forest, they were super nice to them.

Q     But they still asked her to leave?

A     No, they did not.

Q     Why did you take her out?

A     No.  They said -- I'm sorry.  There was a teacher there that suggested Summerwood School because it was a smaller classroom and they thought ██████ would do better in a smaller classroom.

Julia M. Rangel, 314th Court Reporter
713-222-4910

Q    And you understand this Steven Morgan, how long has he been in the home?

A    Since he was born.

Q    You understand there may be a sexual abuse allegation against him that's been brought up?

A    That's the allegation.

Q    Do you understand that that could be possible?

A    Steven would never do that.

Q    Okay.  And who is the grandfather?  This man?  So even --

A    Yes.

Q    So even though he has adopted the children as the father, he's still referred to as Grandfather?

A    Yes.

Q    Okay.  And you understand there's maybe a sexual abuse allegation against him --

A    Yes.

Q    -- according to the papers?

A    Yes.

Q    That's what we're trying to find out.

A    Yes, I understand that, sir.

Q    All right.

MR. SHELTON:  Pass the witness.

THE COURT:  Anything else?

MR. RITTER:  No, Judge.

THE COURT: No? Okay.

MR. SHELTON: Offer these into evidence. Ad Litem's 1.

THE COURT: They're admitted.

MR. SHELTON: And two.

THE COURT: Okay. Status hearing?

MR. RITTER: October 1st, Judge.

THE COURT: Okay. We'll have a forensic interview by the time we come back?

CASEWORKER: For ██████?

THE COURT: Or both.

CASEWORKER: ██████ has already had one.

THE COURT: She already did?

CASEWORKER: Yes.

THE COURT: All right then. Thank you. Y'all are excused.

THE STATE OF TEXAS )

COUNTY OF HARRIS     )

I, Julia M. Rangel, Official Court Reporter in and for the 314th District Court of Harris County, State of Texas, do hereby certify that the foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

WITNESS MY OFFICIAL HAND this the 2nd day of September, 2015.

/s/ Julia M. Rangel
JULIA M. RANGEL, Texas CSR 6412
Expiration Date: 12/31/16
314th Official Court Reporter
Harris County, Texas
1200 Congress, 5th Floor
Houston, Texas 77002
713-222-4910

# APPENDIX A

**3**

SUPPLEMENTAL REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
CAUSE NO. 2015-04673J

IN THE INTEREST OF                    ) IN THE DISTRICT COURT
                                      )
████████ ████████ ████████            ) HARRIS COUNTY, TEXAS
████████ ████████ ████████            )
                                      )
CHILDREN                              ) 314TH DISTRICT COURT


*********************************

SHOW CAUSE EXHIBITS

*********************************

On the 25th day of August, 2015 the following proceedings came on to be heard in the above-entitled numbered cause before the Honorable John Phillips, Judge presiding, held in Houston, Harris County, Texas.

Proceedings reported by Computerized Stenographic Machine Method.

A P P E A R A N C E S

Mr. Marc Ritter
SBOT: 165951500
ASSISTANT COUNTY ATTORNEY
1019 Congress, 17th Floor
Houston, Texas 77002
Telephone: 713-274-5232
Counsel for T.D.F.P.S.

Mr. Patrick Shelton
ATTORNEY AT LAW
SBOT NO. 18208900
3600 Montrose, Suite 104
Houston, Texas 77006
Telephone: 832-216-5909
Counsel for The Children

Ms. Alison Meyers
ATTORNEY AT LAW
SBOT NO. 24041477
1601 Westheimer Road
Houston, Texas 77006
Telephone: 713-859-9271
Counsel for Respondent Mother Rosemary Margenau

Ms. Juli Crow
ATTORNEY AT LAW
SBOT NO. 24000653
P. O. Box 10152
Houston, Texas 77206-0152
Telephone: 281-382-1395
Counsel for Respondent Father George Margenau

```
                          I N D E X
                          VOLUME 1
                     (SHOW CAUSE EXHIBITS)

August 25, 2015

Ad Litem's No.    Desc.                      Offrd Admtd Vol.

1 - Photo.....................................  26    26   1

2 - Photo.....................................  26    26   1

                                                   Page Vol.

Court Reporter's Certificate.....................   6    1
```

Ad Litem's No. 1

Photo



9-4-07

2015 04173 J
314a



Ad Litem's No. 2

Photo

10-22-03
2015-04673J       314R



TRIAL CAUSE NO. 2015-04673J

IN THE INTEREST OF ) IN THE DISTRICT COURT
)
████ ████ ████ ) HARRIS COUNTY, TEXAS
████ ████ ████ )
)
A CHILD ) 314TH DISTRICT COURT

I, Julia M. Rangel, Official Court Reporter in and for the 314th District Court of Harris County, State of Texas, do hereby certify that the foregoing exhibits constitute true and complete duplicates of the original exhibits, excluding physical evidence admitted, tendered in and offer of proof or offered into evidence during the Show Cause Hearing in the above entitled and numbered cause as set out herein before the Honorable John Phillips, Judge of the 314th District Court of Harris County, Texas, beginning August 25th, 2015.

I further certify that the total cost for the preparation of this Reporter's Record is $175.50 and will be paid by Respondent Mother.

WITNESS MY OFFICIAL HAND this the 3rd day of September, 2015.

/s/ Julia M. Rangel
JULIA M. RANGEL, Texas CSR 6412
Expiration Date: 12/31/16
314th Official Court Reporter
Harris County, Texas
1200 Congress, 5th Floor
Houston, Texas 77002
713-222-4910